Ladies and gentlemen, please rise. This court is now in session. Maybe seated in the purple. Call the next case 3 21 0 6 0 2 in writing. Yeah. Yeah. Yeah. Yeah. Mr Is it munch? Munch? Munch? You may proceed. Oh, good afternoon. May it please the court counsel. My name is Patrick Munch and I represent claimant and appellant Jackie. It's pronounced leasing in this appeal. This is an appeal from an order of the Tazewell County Circuit Court granting a motion for disallowance and dismissal of a claim. Miss leasing filed in the matter of the estate of Henry Hicks. The claim is based on a pending federal lawsuit alleging Mr Getz violated a risk is prohibited transaction rules. The threshold is positive issue before this court is one of federal preemption. Congress through Arisa gave participants of pension plans six years to file the type of claims Miss leasing asserted against Mr Getz's estate. There's no dispute that claimant filed a complaint within that six year period. The Illinois Probate Act has a two year deadline to submit claims. The question is therefore simple. Under the supremacy clause of the U. S. Constitution does the six year limitations period that Congress included in Arisa for the claim asserted in this case preempt the shorter period under the Illinois Probate Act resolution of that question turns on congressional intent, and Congress has made its intentions clear by including both one a conspicuously broad preemption provision in Arisa and two, explicitly giving six years to pension plan participants to remedy the type of claim asserted in the pending federal case. The conspicuously broad preemption provision in Section 1144A of Arisa which provides for preemption of all state laws in so far as they may now or hereafter relate to any employee benefit plan that is covered by Arisa. Now courts have found that broadly worded provision to be deliberately expansive in order to establish pension plan regulation as an exclusively federal concern. Congress also made its intent clear by providing an explicit limitations period to remedy violations of the sort asserted by misleasing. Given Arisa's expansive preemption provision, the U. S. Supreme Court has held that when there's a direct clash between state law and the provisions and objectives of Arisa, the state law cannot stand. And there is a direct clash in this case between Arisa's objectives and the shorter limitations period in the Illinois Appropriate Act. Applying the shorter period would infringe upon the exclusive federal concern in uniformity of pension plan regulation and would frustrate congressional goals that allow pension plan participants to seek remedies for damage to their retirement plan. Claimant alleges Mr. Getz knew of and benefited from transactions that are deemed prohibited under Arisa. Those prohibited transaction rules were designed by Congress to bar categorically a transaction that was likely to injure the pension plan following its observation of abuses such as the sponsor sale of property to the plan at an inflated price. And that is a very abuse alleged in misleasing this plan. That the ESOP in which he is a participant paid an inflated price for its shares sold by Mr. Getz. The federal action thus seeks to realize a core objective of Arisa, recovering for abuses to pension plans. Application of a shorter period would interfere with that goal. Again, the focus of this preemption inquiry is congressional intent and Congress expressly provided six years to plan participants to seek recovery for prohibited transactions that harmed the retirement plan such as this one. In concluding that Arisa's six-year statute for this claim preempted the probate act, Judge Mim recognized the importance of Congress's inclusion of an explicit six-year limitations period for this type of claim. He noted that because Congress expressly provided a limitations period for this type of claim, it necessarily considered that period essential to enforcement of those claims. An application of the shorter state period for filing would infringe on congressional intent. And Judge Mim's decision is not alone in concluding that Arisa preempts similar and conflicting state probate laws. In our briefing we cited the Ninth Circuit case of Board of Trustees v. H.F. Johnson where similarly the pension plans claims run timely under the Montana non-claim statute, but the court held Arisa's statute of limitation preempted the Montana statute. And it relied in part on a Supreme Court case which held if Congress explicitly puts a limit upon the time for enforcing the right which it created, there is an end of that matter. The congressional statute of limitations is definitive. Likewise, we cited Hemphill v. the State of Rice Camp, a similar case discussing the California De Steen statute, which shortened the period during which a cause of action can be brought against an Arisa fiduciary and therefore conflicted with the Arisa statute of limitations at issue because it would operate, again, to limit available remedies under Arisa and thereby frustrate its purpose. And we also cited a case in the Northern District of Illinois where although the court didn't ultimately reach the issue, the court said there is a great deal of force to the argument that the shorter Minnesota statute will be preempted by the six-year statute of limitations that Congress has expressly prescribed. As these cases and the Supreme Court cases that we cited, Boggs and Egelhoff, make clear Arisa can state regulations such as probate and family law. As quoted in the Minnesota Warehouse and H.F. Johnson decisions, Arisa preemption is to be construed broadly and it is not limited to state laws designed specifically to affect employee benefit plans. You wouldn't know by reading the executor's brief that this appeal rises or falls on the question of federal preemption. You wouldn't know that the Supreme Court has said if Congress includes a limitations period, that is the end of the matter. The executor doesn't address the supremacy clause or perform the necessary preemption analysis. The executor even argues Arisa is not relevant to this court's analysis. The executor has thus conceded that, in fact, there is a conflict between the federal and state provisions and that enforcement of the shorter limitations period would subvert congressional intent to protect retirement plans by allowing participants to recover from those who benefit from prohibited transactions. Because Arisa's six-year limitation period for this particular claim preempts the conflicting two-year period under the Probate Act, the circuit court's order should be reversed. And because preemption is dispositive of this appeal, the court can ignore the executive's arguments in support of affirmance, arguments that all imagine a universe in which Arisa's limitations period does not exist and does not preempt the Probate Act for the claim issue. However, I will address them briefly. The executor's first argument is that the probate court lacks jurisdiction to adjudicate the claim because it was not filed within that two-year period in the Probate Act. But that assumes that the Probate Act was not preempted, which is incorrect. The cases cited by the executor do not address federal preemption and merely note that the Probate Act as a jurisdictional provision is not subject to tolling, whether it's for incapacity or waiver for any of the number of instances that a statute could be tolled. That's relevant here where a claimant is not arguing the Probate Act should be tolled, but it is instead preempted as Congress intended. The executor also argues that claimant could not recover from the estate because the time to submit a claim closed after two years. Again, that argument relies on the faulty assumption that the Probate Act is not preempted. If the limitations period is preempted, then the claimant can remain in line with other creditors and the amount of the claim is the only uncertainty. The executor also asks the court to consider the policy reasons for the Probate Act's limitations period, but preemption analysis does not involve weighing the state statutes and the state interest against the federal interest. The question is whether there's a conflict between congressional objectives and the state statute, and again, the executor conceded that issue by not responding to it. The policy considerations for the Probate Act may have been relevant when Illinois courts decided that the Probate Act is not subject to tolling or waiver as a granted jurisdiction as opposed to a general statute of limitations, but is not important for the preemption question for this court. The executor's remaining legal arguments are based on federal procedural law, that the estate lacks capacity to be sued under Federal Rule Civil Procedure 17, and that the probate exception to federal jurisdiction applies. These are questions not for this court, but for the federal court, and Judge Mim decided those issues and rejected both of them. He rejected the executor's probate exception because it is a narrow exception and the federal court is not being asked to administer the will to question, and Judge Mim rejected the capacity to be sued argument because, again, it risks a six-year period. He found preempted the Probate Act period. Finally, because the law of federal preemption requires reversal of the circuit court, the executor is left with a speculative policy argument that allowing this claim would implicate every conceivable statute of limitations, but that is not the question in this case. This decision is limited to a specific and broad ERISA provision, where Congress has provided an explicit limitations period to further ERISA's clear objectives. The executor's abstract concerns are speculative and overblown. If there is any question about that, the court need look no further than an earlier decision by Judge Mim in which he held a different ERISA provision did not preempt Illinois Probate Act because, unlike this case, the section of ERISA in that case did not include an explicit limitations period. So even if policy arguments were relevant to preemption analysis, the executor is left to show that his purported fears are real. And finally, I'll note that, and we addressed this briefly in our reply brief, that when the executor filed in the trial court, she moved or argued that it was untimely under 12A1 and then moved to 12A3 for purposes of the appeal. We argue, one, it's relevant because it's preempted, so it doesn't matter what section you're in. Two, she waived the argument by not raising that argument in the trial court. And three, while it's unclear why she changed from 12A1 to 12A3, it may be because, and this did not become apparent until you look at a footnote in the executor's brief, that there was a revised notice of claim filed in the state, where originally they filed, issued notice in newspapers back in January 2018, as they were supposed to do, and then turned out that it was done incorrectly and in no sleep of the wrong court. So originally it was for Peoria, then moved to Tazewell, but that corrective form was never filed in court as it's required to be until, I believe, June of 2021, after the proposed complaint was filed against Mr. Goetz in the state. That's one reason they don't say why. So for all those reasons, the appellant respectfully requests that the circuit court order be reversed and Ms. Leeson's claim be allowed. Does the court have any questions? Mr. Mutch, what would have happened, and I know I'm guessing, to speculate, I guess, what would have happened if the state had already been closed? I'm not sure exactly what would have happened in that case, but those aren't the facts of this case. At least as of the fall of 2021, the executor of the shares went into the state, and the state still had assets from the sale of those shares. So I can't speak to exactly what would have happened in that case, but those aren't the facts of this case. I was just trying to figure out what the breach is of the preemption. Sure. We are only asking for this limited preemption to the facts of this case, where the state is still open. Thank you. Mr. Mutch, there was no right to sue a common law, a deceit, correct? That's correct. I believe that's correct. So where did that right come from? From the Illinois Probate Act, yes. So this jurisdictional argument that you dismiss under preemption, I understand that I've read the case out of the And it certainly says what it says, and Judge Mims' opinion says what it says. But how do you dismiss, in short order, the fact that there would be no right but for the state statute? The state can allow and create the right to sue the estate, but it still is a and what can that state statute do when allowing someone to sue an estate? And you still have to square that with the supremacy clause and can't restrict rights that Congress has shown every intention should allow the plaintiff participants to recover for violations of ERISA. So Illinois had the right to create the right to allow suing an estate, but still has to comply with federal statutes, however. Any other questions? Mr. Mutch, you'll have five minutes for rebuttal as well. Thank you. Thank you, Your Honors. May it please the Court and the Counsel. My name is I know it's a tough one, so I appreciate your efforts. And again, I'm here for the It's clear that the panel is familiar with the briefing on this topic, and there has been substantial briefing, so I will be brief. We have no disagreement about the fact that the statute of limitations for ERISA claims of the type that are at issue here is six years. That's not the issue. The issue is whether the Circuit Court properly disallowed Ms. Leesing's claim under the non-claim provisions in the Probate Act. As Mr. Justice Heddle highlighted, at common law, there was no right to sue a deceased person. Mr. Goetz was long dead, frankly, at the time the federal case was filed. It had been well in excess of two years since his death before the claim was made against him in the federal case. Therefore, at common law, there would have been no cause of action against Mr. Goetz's estate. And that's in the Relf case that we cited in the brief. The Illinois legislature changed the rules on that by enacting the Probate Act. That created a creature of statute. An estate doesn't have an independent life the way that a person would. It is specifically delineated by the terms of the Probate Act. In the Zegaria case, which we cited, the court states, the administration of deceased estates is a creature of statute. The Probate Act governs the administration of estates in Illinois. And the court, interestingly, goes on at paragraph 17 to state, quoting In re estate of Denton, which is a Second District case, states, the administration of an estate in the Probate Court is not an action between or among parties, but is in the nature of a proceeding in rem, acting directly on the rest, which is the estate is a judgment in rem. So we're not contesting the fact that Ms. Leesing has a federal cause of action for under ERISA potentially. The problem here is that the entity that she is suing is no longer amenable to suit. So turning then to the index 12A, there are a few different provisions that trigger a claims bar period of six months. I believe in our filings before the circuit court, we referenced A1. And then in our briefing, we referenced A3, which is the published notice. And actually, that published notice is what we argued before the circuit court, as you'll see in the transcript that was attached with our brief. So we don't believe that that issue was waived by any means. But in any case, the two-year bar that's set forth in 1812B states that even if nothing is done to open the estate, no letters of office are issued, there is a hard bar two years after the death of a person on any action against their estate under the Probate Act. So this creates the finality that an entity can receive funds without any fear of something happening untoward after the fact. So there is no dispute in this case that Ms. Leesing's claim was filed after both the publication bar date and more than two years after Mr. Goetz's death. And therefore, if the non-claim provisions are applied, Ms. Leesing's claim is clearly barred by the Probate Act. The question here is not whether Ms. Leesing filed in the past. The question is whether the circuit court has jurisdiction to allow Ms. Leesing's claim in Tazewell County. So turning to the jurisdictional question, in the Parker case, as Mr. Minch referenced, the Illinois courts have long held that the time period to file a claim against an estate under Section 1812B and its predecessor statutes is a grant of jurisdiction, not a general statute of limitations. Continuing on, once the statutory time period expires, the court has no power or jurisdiction to adjudicate a claim against the estate. That was from the Parker case. You can also see the Epstein case, the King case, a litany of cases that were quoted in our brief. So the question is this. As of two years after Mr. Goetz passed away, the circuit court was divested of jurisdiction to adjudicate any claim against the estate that hadn't already been filed. Mr. Minch would have us believe that a subsequent action years later somehow, I hate to use this term, but the Tazewell County Court to entertain claims that it had no jurisdiction to entertain until then. I see nothing in the case law that has been cited that is Illinois case law that says that a federal statute can somehow create jurisdiction in the Illinois state court over an estate after the claims bar period. And that's actually something to highlight here, which is this case law. I didn't talk about preemption very much because it's apples and oranges. We've got the statutes of limitation. Yes, ERISA trumps the statute of limitation. And then we have a non-claim statute. This is a jurisdictional question. As Justice Hebbel highlighted, the estate is a creature of statute. Its capacity to be sued, its continuing legal substance is based on adherence with those probate act provisions. So it is apples and oranges. And in fact, Judge Mim even sort of acknowledged that in his order in which he stated that Ms. Leesing, quote, is seeking a judgment so that she has the opportunity to stand with the other creditors in pursuing funds from the estate. Well, that's fine. She does not, however, have some special authority that supersedes the jurisdiction of the court and sets her apart from other creditors. That would be a gross expansion of the probate act by the federal court. And there's simply nothing in the Illinois state court precedent that cracks the door on that. In the end, there are good public policy reasons behind the probate act's two-year bar. There's actually bases in the federal law that we discussed in terms of the probate exception and so on. Kind of goes to the Parker or the Zegaria rule about this being in REM jurisdiction, that kind of thing. There's lots of great reasons for this rule. And we went through them in our brief, and I know that you all are familiar with that. So in the end, though, we have a very simple question, which is, how is it that the Tazewell County Circuit Court was supposed to not apply the probate act in ruling on allowance of a claim filed under the probate act? There's no argument here about the probate proceeding in the state court. They didn't move to stay the probate proceeding, didn't try to remove it to the federal court, none of that. They filed a claim under the probate act in Tazewell County. That claim was untimely. The circuit court ruled appropriately in disallowing it. And that is as far as our discussion needs to go at this point. For all those reasons and the reasons stated in our briefing, we would ask that the court affirm the decision of the Tazewell County Circuit Court. I'd be happy to answer any questions or address any concerns. A few. The notice issue that was raised by Mr. Minch, is that an issue, and I have my dates, I don't have my dates remembered here, but I thought he said that that notice would have been very close at the time that the claim was filed. First off, that would be under the A-1, and that notice was published in January of 2018, and set a claims bar date of six months. So even if we applied that, it would still be three years before they filed. In addition, the two-year absolute claim bar date. I understand that, Counsel. But the premise that was suggested was that it noticed the wrong courthouse, so it was not proper notice, and that there was later notice that apparently came around the time of this file? No, the later notice is the one that was published on January 6th of 2018. That was the later one. There had been a prior, a few weeks before. So the issue was identified and addressed within a couple of weeks. The first one was November of 2018, correct? I think that sounds right. And then January of 2019 is the correct one? Correct. And then the six months to July 6th of 2019. I'm sorry. Actually, I apologize for that. The original notice, I believe, was immediately after Henry's death in February of 2017. It's been a while. The revised corrected notice was published on January 6th of 2018, and it set a bar date of six months from July 6th of 2018. And then the two-year deadline hit on November 3rd of 2019. So November 3rd of 2019, Ms. Leesing filed her federal case initially in April of 2020 and joined Mr. Goetz as a party in August of 2021. So at the point that Ms. Leesing filed her claim against Mr. Goetz in the federal case, it had been nearly two years since the complete bar date and nearly four years after his death. So I apologize for getting my teams wrong. No, I just wanted to address that particular issue. We're still out of curiosity. Was the estate closed when this was filed? The estate was still open, waiting on the state tax return clearance. Okay. They often linger. And can you distinguish the Board of Trustees, the Ninth Circuit case, the Montana probate code from our probate code? Are they the same? I think that they're functionally the same, and I think that the Ninth Circuit got it wrong. I think that the Board of Trustees had some issues. I think also that they're, I can't know how they argued it, but to me it seems that they might have gone down the garden path of the statutes of limitation being equivalent rather than focusing really on what is a question of statutory authority. So the question is, what do you do? And so frankly, yes, I think the Ninth Circuit got it wrong. And I can't say why, but they did. And you think that we could say that also? I think you can. Thank you, Ms. Knight. Thank you very much. Thank you very much. Any further rebuttal? A few quick points. Just to clarify the questions about what was filed when, I don't want to be accused of impugning someone's filing something incorrectly, but in the, if you look at our plaintiff's appendix, A009, and this was what we had filed as what we thought was the executor filing with the court the notice of the claims. And the date of that, the file stamp of that was from December 18th, 2017. And then in the executor's appendix for this appeal at SA001, it's my understanding this was the corrected notice of claims, and that is file stamp 62421, 2021. So that's the issue that I was raising. As to Your Honor's question about WITCO, we would argue, for many of the same reasons that we argued in the brief, that that's a CERCLA decision. CERCLA has a completely different preemption provision, not as broad as the federal defense, that actually suggested that Congress intended not to preempt, which is obviously distinguishable from ERISA for all the reasons that we stated. In the end, I think we have fundamental disagreement about whether this is a preemption case or not. My final point on that matter is that the probate act is a state law. It's our position that that state law conflicts with Congress's intent, and therefore you go to preemption analysis, you go to preemption analysis, you look at congressional intent, and it's our position that Congress intended to supersede or preempt any state laws that would restrict the ability of pension plan participants to enforce its rights and taking it out six years. If there were no probate act, do you believe that your client would have had the authority to come after a decision in Illinois if there were no probate law? I can honestly say I don't have an answer for that. I'm not sure, Your Honor. Because, I mean, really all this act and the non-claims statute, it doesn't really artificially extend the life of a person for purposes of settling their debts and dispersing to claimants. So, you know, if the probate act operates, you know, in that manner, for two years, we're going to consider the person is still, you know, living from a legal standpoint, would you see that as jurisdictional or a statute of limitations? I'm not sure I completely understand the question. It's on me for not understanding it. If there was no right, because there's no probate act, no right to sue, no right to attach after someone's death, then would you be able to bring your claim if there was no probate act? Sure, and I honestly do not know if there's another, there would have been another route to pursue the money that flowed into, Mr. Getz received from the ESOP transaction, but for the probate estate. I'm not sure, Your Honor. Thank you. Just to clear one thing up. I'm new here, so I probably shouldn't be doing this, but I overheard counsel talking about what you had just cited regarding the issue of the filing of the notice, and if you look at it, does it say that the notice was filed on the date, which you had just talked about, 6-24-21, but does it say that it was published on a different date? Right, yeah, so I'm drawing a distinction between the published date and the filing date, because the Illinois Probate Act says you need to file it on top of just publishing it. Right, but it doesn't say that you need to file it. It needs to be filed in the probate case. It's when it's published, which is applicable. I don't know if that concludes it, because it does say you also have to file it, but I think the first step would certainly be to publish it. Yes. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible. And with that, I believe we are finished until tomorrow morning.